lien, I considered myself at liberty to adopt it. I did not intend, however, to decide that the courts of this country, would give a lien in every case where it was given by the Commercial Code of France; indeed, many of these liens, particularly those for the wages of the master, for supplies furnished for domestic vessels, and for the expense of building and equipping, have been held by the supreme court not to exist in this country. Where the contract is · maritime, I should be very reluctant to deny the lien, but where, as in this case, the services are rendered, not in aid of the navigation of the vessel, but while she is laid up for the winter, it seems to me the service is not maritime, and consequently that the party is not entitled to his lien.

Nor do I think the lien is saved in this case, because no new contract was made, but the party remained on board during the winter, without having been paid in the fall for his services, as cook. Had his services as watchman been performed merely as an incident to the navigation of the vessel, and while she was lying up in some port, it would have been saved, by the rulings in such cases as The Gazelle [Case No. 5289]; Pittman v. Hooper [Id. 11,185]; Brown v. Lull [Id. 2,018]; The Jane and Matilda, 1 Hagg. Adm. 187; The Sloop Canton [Case No. 2,388]. But the contract as a cook and seaman terminated with the season of navigation and with the discharges of the crew, and if libellant remained on board while the vessel was laid up in winter quarters, he must be held to have remained, by implication, under a different contract, although no new contract was actually made, circumstances had intervened, which put an end to the first contract, and he must be held to know that if he remained on board during the winter, it was not in the capacity of a seaman or cook.

Inasmuch as the time when the vessel was laid up, does not clearly appear, the libellant is entitled to recover for his wages as seaman and cook, at sixteen dollars per month, from the 26th of March to the 1st of December, which, in absence of evidence to the contrary, I would hold to be the close of navigation.

CHAMPION, The (HURLEY v.). See Case No. 6,919a.

## Case No. 2,585.

### CHAMPION v. ROSS.

[4 Wash. C. C. 325.][1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1822.

PRACTICE—RULE TO SHOW CAUSE OF ACTION.

On a rule on plaintiff to show his cause of action, who thereupon files a positive affidavit

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

of the debt, the court will not order the party making the affidavit to be examined on oath in court; no ground appearing to the court to justify a suspicion that the debt was not due.

Rule on the plaintiff to show cause of action, and why the defendant should not appear on common bail.

Mahany, for plaintiff, showed cause, by reading the positive affidavit of the plaintiff, that the action is founded on certain promissory notes due by the defendant to the plaintiff, as assignee.

Scott, for defendant, moved to examine the plaintiff in court, as he doubted the fairness of the assignment.

BY THE COURT. The affidavit of the plaintiff, being positive, and no ground appearing to the court to justify the suspicion entertained by the counsel, the rule must be discharged.

CHAMPION (UNITED STATES v.). See Case No. 14,779.

CHAMPLIN (SANDS v.). See Case No. 12,303.

## Case No. 2,586.

### CHAMPLIN v. TILLEY et al.

[1 Brunner, Col. Cas. 71;[1] 3 Day (Conn.) 303.]

Circuit Court, D. Connecticut. 1809.

FOREIGN EXECUTORS AND ADMINISTRATORS — RIGHTS AND POWERS OF—EVIDENCE — ADMISSIBILITY OF LETTERS TO DENY PARTNERSHIP — PARTNERSHIP—BOOK ACCOUNT AS EVIDENCE OF —JOINT CONTRACT—EFFECT OF JUDGMENT ON.

1. Letters testamentary issued under the authority of one state are not available in another. But if to an action brought by an executor, on a cause of action arising in the lifetime of the testator, the defendant plead the general issue, the plaintiff cannot be required on the trial to produce any letters testamentary.

2. In an action against A. and B. as partners on a contract executed in the partnership name, A. suffered a default, and B. pleaded the general issue; held, that letters written by A. in the partnership name could not be read in evidence by B. to show that he was not a partner with A.

3. In such case an account book containing entries made by A. and B. may go to the jury as evidence of a partnership.

4. In an action on a joint contract against two, where one has suffered a default and the other has obtained a verdict, judgment must be entered up for both.

The plaintiff [Christopher Gibbs Champlin, as executor of Christopher Champlin] in his declaration stated "that at New Port the defendants [James Tilley and William Tilley], by said William Tilley, purchased of said deceased a quantity of hemp, to be manufactured at their rope factory in New London, on a credit of four months, and to secure payment thereof the defendants, at said New Port, by said William

[1] [Reported by Albert Brunner, Esq., and here reprinted by permission.]